IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

```
GORDON GARRISON,              )
                              )
          Plaintiff,          )   No. _____
                              )
vs.                           )
                              )   COMPLAINT
NEW FASHION PORK LLP, and     )
BWT HOLDINGS LLLC,            )
                              )
          Defendants.         )
```

Comes now the Plaintiff and for cause of action states:

INTRODUCTION

1. Plaintiff, Gordon Garrison, owns real estate in Emmet County, Iowa.

2. Defendant, New Fashion Pork LLP, owns and operates a confined animal feeding operation adjacent to Mr. Garrison's property in Emmet County, Iowa. This confined animal feeding operation is permitted to hold 4,400 head of hogs weighing 55 pounds or more and up to 8800 hogs if they weigh less than 55 pounds.

3. BWT Holdings LLLC is a subsidiary of New Fashion Pork LLP. BWT Holdings owns the land where the waste from the confinement operation referred to in the preceding paragraph is applied to crop fields.

4. The aforementioned animal feeding operation began operation on or about January 1, 2016.

1

5. The aforementioned animal feeding operation is in violation of state and federal law in the following respects:

a. The Defendants have violated and continue to violate Section 7002(a) of the Resource Conservation and Recovery Act (RCRA) by contributing to the past and present handling, storage, treatment, transportation, and/or disposal of solid and hazardous waste in such a manner that may present an imminent and substantial endangerment to health and the environment. 42 U.S.C. § 6972(a). Plaintiff further alleges that the Defendants employ improper manure management practices that constitute the "open dumping" of solid waste in violation of Section 4005(a) of RCRA. 42 U.S.C. § 6945(a).

b. The manure management plan submitted for the above operation allows a nitrogen application rate of 232 pounds/acre. Iowa Code § 459.312(10)(f) requires that a manure management plan provide for methods, structures, or practices to prevent or diminish soil loss and potential surface water pollution. The manure management plan in this case does not comply with this requirement. Therefore, the Defendants are in violation of Iowa law.

c. The Defendants' confinement feeding operation is in violation of the Clean Water Act, 33 U.S.C. §§ 1251 et seq., by discharging pollutants into surface waters and groundwater without a National Pollutant Discharge Elimination System (NPDES) permit.

d. The Defendants' are in violation of Iowa law and regulations by discharging manure through air emissions from their confinement feeding operation at times other than periods of manure disposal.

e. The land on which manure from the Defendants' confinement feeding operation is being applied is highly erodible land and does not comply with the conservation plan required by the Natural Resource Conservation Service (NRCS).

f. The construction and operation of the Defendants' confinement feeding operation is in violation of Iowa drainage law.

g. The operation of Defendants' confinement feeding operation constitutes a nuisance affecting the Plaintiff's use and enjoyment of his property.

h. The operation of Defendants' confinement feeding operation has been, and is, a trespass on Plaintiff's property.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1331 because it arises under federal statutes. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the parties are present in the Northern District of Iowa Western Division and the events constituting the Plaintiff's cause of action occur there. This Court has pendent jurisdiction over Plaintiff's claims brought under Iowa state law. 28 U.S.C. § 1367(a).

## CAUSES OF ACTION

## RESOURCE CONSERVATION AND RECOVERY ACT

7. Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B), provides that citizens may commence a citizen suit against "any person," "including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." A notice pursuant to 42 U.S.C. 6972(b)(2)(A) was served on the Defendants. A copy of the notice is hereto attached.

8. Section 1002(b) of RCRA, 42 U.S.C. § 6901(b), states that "disposal of solid waste . . . in or on the land without careful planning and management can present a danger to human health and the environment;" and that "open dumping is particularly harmful to health, contaminates drinking water from underground and surface supplies, and pollutes the air and the land . . . ."

9. As required by statute, the Environmental Protection Agency (EPA) has promulgated criteria under RCRA, 42 U.S.C. § 6907(a)(3), defining solid waste management practices that constitute open dumping. See, 42 U.S.C. § 6944(a); 40 C.F.R. Parts 257 and 258. These regulations outline certain solid waste disposal practices which, if violated, pose a reasonable probability of adverse effects on health or the environment. 40 C.F.R. § 257.3.

10. The purpose of RCRA is "to promote the protection of health and the environment." RCRA seeks to accomplish this by "prohibiting future open dumping on the land and requiring the conversion of existing open dumps to facilities which do not pose a danger to the environment or to health . . . ." 42 U.S.C. § 6902(a).

11. Section 4005(a) of RCRA prohibits "any solid waste management practice or disposal of solid waste . . . which

constitutes the open dumping of solid waste . . . ." 42 U.S.C. § 6945(a).

12. Under § 1004(3) of RCRA, 42 U.S.C. § 6903(3), "The term 'disposal' means the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste . . . into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground-waters."

13. RCRA defines "solid waste" as "any garbage, refuse, sludge from a waste treatment plant . . . and other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from . . . <u>agricultural operations</u> . . . ." 42 U.S.C. § 6903(27)(emphasis added).

14. EPA criteria for solid waste disposal practices prohibit the contamination of any underground drinking water source beyond the solid waste boundary of a disposal site.

15. An "underground drinking water source" includes (1) an aquifer supplying drinking water for human consumption or (2) any aquifer in which the groundwater contains less than 10,000 milligrams per liter of total dissolved solids. 40 C.F.R. § 257.3-4(c)(4).

16. "Contaminate" an underground drinking water source means to cause the groundwater concentration of a listed

6

substance to exceed its corresponding maximum contaminant level specified in Appendix I to 40 C.F.R. Part 257, or cause an increase in the concentration of that substance where the existing concentration already exceeds the maximum contaminant level in Appendix I.

17. In the Defendants' confinement feeding operation the manure from the hogs is collected in a pit below the confinement structure. The pit is then emptied once or twice a year and the waste is applied to crop fields as designated in the Defendants' manure management plan.

18. The application of the manure from the Defendants' confinement feeding operation on the crop fields pursuant to the manure management plan exceeds accepted agronomic rates. The excessive application of manure on the crop fields has and will cause manure nutrients, including but not limited to nitrates and phosphorus, that are not taken up by the crop to be discharged to groundwater and surface water. This renders the manure incapable of serving its intended purpose as a fertilizer.

19. The October 2016 application of hog manure by the Defendants was based on the Defendants' sampling. This sample nutrient analysis showed only 2.4% solids. This is not representative of what would be expected at a similar operation. This allowed the Defendants to justify a higher

7

application rate. The Plaintiff alleges that this resulted in over application and subsequent discharges of pollutants to his property. The Defendants are in violation of § 459.312(10)(b) because that section requires accurate manure analysis.

20. The October 2016 manure application by the Defendants took place when saturated field conditions existed and resulted in discharges to the Plaintiff's property.

21. Manure that has been over-applied by the Defendants on fields and permitted to discharge into groundwater and surface water is a "discarded material" from an "agricultural operation," and is therefore a "solid waste" under § 1004(27) of RCRA, 42 U.S.C. § 6903(27).

22. The solid waste from the Defendants' operation as described above has caused solid waste to be discharged to the Plaintiff's property and has caused an imminent and substantial endangerment to public health and the environment.

23. Defendants' confinement feeding operation constitutes an "open dump" under RCRA § 1004(14), 42 U.S.C. § 6903(14). Any waste management practice that constitutes the open dumping of solid waste is prohibited. 42 U.S.C. §

8

6945. Defendants' are therefore in violation of this prohibition against open dumping.

24. Plaintiff's interests are harmed and will continue to be harmed by the above-described violations of RCRA unless the Court grants the relief sought herein.

## CLEAN WATER ACT

25. The Clean Water Act (CWA) was created by Congress to protect the quality of the country's water resources. To achieve its objectives the CWA relies on the NPDES permit program that controls water pollution by regulating "point sources" that discharge pollutants.

26. Concentrated animal feeding operations (CAFOs), such as the Defendants' confinement operation, are specifically designated in the CWA as point sources. 33 U.S.C. § 1362(14).

27. The stated objective of the CWA is to "restore and maintain the chemical, physical and biological integrity of the Nation's waters" by, among other things, achieving the goal of "eliminat[ing]" "the discharge of pollutants into the navigable waters." 33 U.S.C. § 1251(a).

28. Under the CWA and implementing regulations, the discharge of a pollutant by any person is prohibited, except in compliance with other sections of the CWA, including 33

U.S.C. § 1342, which governs activities subject to the issuance of NPDES permits.

29. A "pollutant" is defined to include, "among other things . . . industrial, municipal, and agricultural waste." 33 U.S.C. § 1362(6).

30. The "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

31. The Defendants, by owning and operating their CAFO, including application of manure on crop fields, have discharged and will continue to discharge pollutants to waters on the Plaintiff's property without an NPDES permit.

32. Under the CWA citizens suit provision a civil action may be maintained against the Defendants by the Plaintiff. 33 U.S.C. § 1365. A notice, pursuant to 33 U.S.C. § 1365(b)(1)(A), was served on the Defendants. A copy of the notice is hereto attached.

## DEFENDANTS' MANURE MANAGEMENT PLAN

33. Pursuant to Iowa Code § 459.312 the Defendants were required to submit to the Iowa DNR a manure management plan specifying the manure application rate on the crop fields.

34. Iowa Code § 459.312(10)(f) requires that a manure management plan provide for methods, structures, or

10
Case 3:18-cv-03073-CJW-MAR   Document 1   Filed 12/20/18   Page 10 of 16

practices to prevent or diminish soil loss and potential surface water pollution.

35. The Defendants' manure management plan allows a nitrogen application rate of 232 pounds/acre. This does not take into account for the lack of NRCS designed and maintained grass waterways to limit erosion on highly erodible land, the use of outdated guidelines for the application of nitrogen, and that there is no restriction on the manner and method of field drainage.

36. Because the Defendants' manure management plan does not provide for consideration of the site specific issues on the Defendant's disposal fields, the Defendants are in violation of Iowa law.

37. As a proximate cause of the overapplication of manure on the Defendants' application fields pursuant to their manure management plan, pollutants are being discharged to the Plaintiffs' property.

38. Pursuant to Iowa Code § 455B.111 a civil action may be maintained against the Defendants by the Plaintiff for violating any provision of Chapter 459 of the Iowa Code or any rule adopted pursuant to that chapter. A notice, pursuant to § 455B.111(2), was served on the Defendants. A copy of the notice is hereto attached.

## DISCHARGE OF MANURE THROUGH AIR EMISSIONS

39. Emission of the air inside the Defendants' confinement structure is discharged continuously into the ambient outside air through an array of fans on the structure.

40. The air being discharged to the outside is laced with chemicals, bacteria, and other pollutants excreted by the animals inside the structure.

41. Iowa Code § 459.311(1) and 567 IAC § 65.2(3) state that manure must be controlled by retaining it in the confinement structure until it is applied to the crop fields.

42. Iowa Code § 459.102(39) defines manure as "animal excreta or other commonly associated wastes of animals, . . . ."

43. Based on the foregoing definition of manure and the requirement that manure be retained in the confinement structure until it is applied to the crop fields, the air emissions from the structure containing pollutants excreted by the animals place the Defendants in violation of the statute and regulation.

44. The illegal discharge of manure through air emissions from the confinement structure adversely impacts

12

the Plaintiff's health and the use and enjoyment of his property.

45. Pursuant to Iowa Code § 455B.11 a civil action may be maintained against the Defendants by the Plaintiff for violating any provision of Chapter 459 of the Iowa Code or any rule adopted pursuant to that chapter. A notice, pursuant to § 455B.111(2), was served on the Defendants. A copy of the notice is hereto attached.

<u>IMPROPER APPLICATION OF MANURE ON HIGHLY ERODIBLE LAND</u>

46. The waste from the Defendants' confinement feeding operation is being applied to fields on highly erodible land owned by BWT Holdings.

47. The Federal Farm Bill requires farm operators who farm highly erodible land to sign and submit a Form 1026 that certifies that the operator has a conservation plan and is following it.

48. The Form 1026 signed and submitted by BWT Holdings for 2015 and following years state that BWT Holdings has a conservation plan and is complying with it.

49. In fact, BWT Holdings is not complying with its conservation plan. The conservation plan calls for 7.7 acres of grass waterways to avoid erosion of the soil and to filter runoff from the fields. These waterways are either non-existent or nonfunctional.

50. Based on the foregoing, BWT is in violation of its conservation plan for highly erodible land and submitted a false Form 1026.

51. As a proximate result of the foregoing violations by BWT, pollution from the waste applied to the land from the Defendants' confinement operation is being discharged to the Plaintiff's property.

## VIOLATION OF IOWA DRAINAGE LAW

52. Under Iowa drainage law, liability exists if the manner or method of drainage on to the land of another is substantially changed and actual damage results.

53. The manner or method of drainage from the Defendants' manure application fields to the Plaintiff's property has been substantially changed by allowing the over-application of manure to drain onto Plaintiff's property and causing damage to the Plaintiff's property.

54. The manner and method of discharge has been changed by pattern tiling, conducted by the Defendants in the Spring of 2017. This increases the total yearly discharges. The pattern tiling removed water from an adjacent watershed and deposits that water into the Plaintiff's watershed, which is a violation of Iowa drainage law.

## NUISANCE

55. The operation of the Defendants' confinement operation creates odor that interferes with the Plaintiffs' use and enjoyment of his property.

56. In addition, runoff of waste and pollution from the manure on Defendants' application fields onto the Plaintiff's property interferes with the Plaintiff's use and enjoyment of his property.

57. Based on the foregoing, the Defendant's have created a nuisance that interferes with the Plaintiff's use and enjoyment of his property.

58. Plaintiff has obtained the necessary mediation release.

## TRESPASS

59. The waste running off of the Defendants' manure application fields enters the Plaintiff's property, causing damage to Plaintiff's property.

60. The waste running off onto the Plaintiff's property constitutes a trespass.

WHEREFORE, the Plaintiff requests the following relief:

A. A declaratory judgment that the Defendants' animal feeding operation is in violation of the laws and regulations as described above;

B. An injunction prohibiting the Defendants from engaging in the practices described above that cause or allow pollution to impact the Plaintiff and his property, and his use and enjoyment of his property;

C. An award of fair and reasonable damages caused by the nuisance as alleged herein;

D. An award of attorney fees and expenses as authorized by law, and the costs of this action; and

E. Such other and further relief as the Court deems just and equitable.

/s/ *Wallace L. Taylor*
WALLACE L. TAYLOR AT0007714
Law Offices of Wallace L. Taylor
4403 1st Ave. S.E., Suite 402
Cedar Rapids, Iowa 52402
319-366-2428;(Fax)319-366-3886
e-mail: wtaylorlaw@aol.com

ATTORNEY FOR PLAINTIFF