**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| GORDON GARRISON,<br><br>Plaintiff,<br><br>vs.<br><br>NEW FASHION PORK LLP; and BWT HOLDINGS LLLC,<br><br>Defendants. | No. 18-CV-3073-CJW-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

---

This matter is before the Court on plaintiff's Motion to Alter or Amend Judgment and for Leave of Court to Amend Plaintiff's RCRA Claim (Doc. 35), defendant's Renewed Motion to Strike (Doc. 43), and defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 39). Both sides timely resisted the opposing side's motion (Docs. 36, 40, 44). Plaintiff timely filed a reply in support of its motion (Doc. 37), and defendants timely filed a reply in support of their motion to dismiss (Doc. 42). For the following reasons, plaintiff's Motion to Alter or Amend Judgment (Doc. 35) is **granted in part and denied in part**, defendants' Renewed Motion to Strike (Doc. 43) is **denied in part** and **denied as moot in part**, and defendants' motion to dismiss (Doc. 39) is **denied as moot**.

## *I. BACKGROUND*

Plaintiff alleges that defendant New Fashion Pork LLP ("New Fashion Pork") "owns and operates a confined animal feeding operation ["CAFO"] adjacent to [plaintiff's] property in Emmet County, Iowa." (Doc. 1, at 1). The CAFO is located on land owned by New Fashion Pork's subsidiary, BWT Holdings LLLC ("BWT Holdings"). (*Id.*). Plaintiff further alleges that defendants have violated and continue to

violate Section 7002(a) of the Resource Conservation and Recovery Act ("RCRA"), the Clean Water Act ("CWA"), the conservation plan required by the Natural Resource Conservation Service ("NRCS"), and several Iowa laws and regulations by improperly disposing animal waste. (Doc. 1, at 3-15). Specifically, plaintiff alleges that hog manure has previously been and continues to be misapplied to fields, causing the manure to overflow onto plaintiff's adjacent property, including into water on his property. (Doc. 1, at 10).

Defendants timely sought to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) and 12(b)(1). (Docs. 9, 13). The Court dismissed plaintiff's RCRA claim with prejudice because plaintiff failed to allege that the overapplied manure was "solid waste" within the meaning of RCRA, and thus failed to state a claim on which relief could be granted. (Doc. 31, at 12-13). In the same Order, the Court granted plaintiff leave to amend his CWA claim to assert facts showing that defendants are making discharges into "navigable waters," as defined by the CWA, on plaintiff's land, and that the violations alleged are not wholly past. (Doc. 31, at 17).

Plaintiff timely filed his Amended Complaint (Doc. 34) in which he asserts the same violations of state and federal law as in the original complaint. (*Compare* Doc. 1, *with* Doc. 34). Plaintiff's amended complaint further alleges that the discharge from defendants' property is being made into plaintiff's stream, that plaintiff's stream constitutes "navigable waters" under the CWA, and that the discharge is ongoing. (Doc. 34, at 8).

Plaintiff also moved for relief from the Court's Order dismissing the RCRA claim with prejudice and sought leave of Court to file the second amended complaint appended to plaintiff's motion. (Doc. 35). Plaintiff's proposed second amended complaint includes allegations of the same state and federal violations as the previous complaints but also includes a modified RCRA claim with additional information regarding whether the

manure discharged from defendant's property onto plaintiff's property qualifies as "solid waste." (Doc. 35-1, at 2-3, 7).

## *II. JURISDICTION*

Defendants allege that the Court lacks subject-matter jurisdiction over plaintiff's CWA claim because the amended complaint only addresses the alleged 2018 violation, and because plaintiff did not properly notify defendants of the alleged 2018 violation before bringing the present suit. (Doc. 42, at 2). The Court requested supplemental briefing to assist the Court in determining if it has subject-matter jurisdiction over plaintiff's CWA claim. (Doc. 46). Specifically, the Court asked the parties to address: 1) whether the CWA citizen suit notice requirement is a jurisdictional requirement; 2) what details, if any, defendants allege were missing from plaintiff's notice; and 3) whether any insufficiency in the notice would require the Court to dismiss plaintiff's CWA claim, even in the absence of any prejudice to defendants. (*Id.*). Defendants timely filed an opening brief on the supplemental issues (Doc. 50) and plaintiff timely filed a responsive brief (Doc. 51).

Before a citizen may commence a CWA suit against an alleged violator, the citizen must provide notice to the alleged violator. 33 U.S.C. § 1365(b). As the supplemental briefing suggests, circuits are split on whether the notice provision for CWA citizen suits is jurisdictional or a condition precedent, and there is no controlling precedent. If giving proper notice under Title 33, United States Code, Section 1365 is a condition precedent to bringing suit, defendants' failure to raise that argument in response to the original complaint acted as a waiver of the right to argue that plaintiff failed to satisfy the condition precedent. If, however, giving proper notice is a jurisdictional requirement that must be met before a federal court may exercise jurisdiction, then defendants maintain the right to raise the argument at any time. Some courts treat the notice provision as jurisdictional. (Doc. 50, at 3-4) (citing *Waterkeepers Northern California v. AG Indus. Mfg., Inc.*, 375

F.3d 913, 916 (9th Cir. 2004); *Bd. Of Trustees of Painesville Twp. v. City of Painesville, Ohio*, 200 F.3d 396, 400 (6th Cir. 1999); *Atl. States Legal Foundation, Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997); *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1189 n.15 (3d Cir. 1995)). Other courts consider the notice requirement to be a condition precedent. (Doc. 51, at 6-7) (citing *Louisiana Envtl. Network v. City of Baton Rouge*, 677 F.3d 737 (5th Cir. 2012)). The Eighth Circuit has not decided the issue, but the United States District Court for the Southern District of Iowa recently addressed the question, which provides persuasive authority. *Hammes v. City of Davenport*, 381 F. Supp. 3d 1038 (S.D. Iowa 2019).

The Court need not determine whether the CWA citizen suit notice provision is jurisdictional or a condition precedent because the notice sent by plaintiff provided defendants sufficient notice. The notice provision of the CWA for citizen suits states:

> [a notice] shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). Courts, however, should "avoid 'an overly technical application of the regulatory requirements'" and "'adequate notice does not mandate that citizen plaintiffs list every specific aspect or detail of every alleged violation.'" *Hammes*, 381 F. Supp. 3d at 1042 (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 629 F.3d 387, 400 (4th Cir. 2011)). Because not every detail of every alleged violation is necessary and because courts should not be overly technical in evaluating the requirements, the Court finds that plaintiff provided defendants adequate notice before commencing this suit.

First, plaintiff's notice included sufficient information to permit defendants to identify the specific standard, limitation or order alleged to be violated. A citizen suit may be based on an alleged violation of "an effluent standard or limitation" under the CWA or "an order issued by the Administrator or a State with respect to such a standard or limitation." *Williams Pipe Line Co. v. Bayer Corp.*, 964 F. Supp. 1300, 1317 (S.D. Iowa 1997) (citing 33 U.S.C. § 1365(a)(1)). "[A] citizen suit can [also] be based on allegations that the defendant is discharging without an NPDES permit." *Id.* Plaintiff's notice contained both an alleged violation of a standard or limitation and an alleged NPDES permit violation. (Doc. 34-3, at 1, 5). Specifically, the notice contained information about the manure management plan which included information on how manure would be applied to fields. (Doc. 34-3, at 1, 5). Plaintiff alleges in his notice that defendants' plan called for applying manure 52 pounds per acre above the recommended rate for similar fields. (*Id.*). Plaintiff's allegations identify the specific standard for manure application and the amount by which defendants have allegedly exceeded that standard. (*Id.*). Plaintiff's notice also alleges pollutants have been discharged onto neighboring property without an NPDES permit. (*Id.*, at 5).

Second, the notice stated the activity alleged to constitute a violation. The notice alleges manure is emptied from the holding pits twice a year and spread on crop fields consistent with the manure management plan, which specified manure could be applied to the fields in amounts that exceeded the standard application amount. (*Id.*, at 3). The notice asserts that the excess manure was a pollutant that was allegedly discharged to waters on plaintiff's property, which constitutes an alleged violation. (*Id.*, at 5).

Third, the notice identified the persons responsible for the violation. The letter is addressed to New Fashion Pork and BWT Holdings. (*Id.*, at 1). The letter identifies itself as a notice of intent to sue New Fashion Pork and BWT Holdings. (*Id.*). The notice states that "[b]y owning and operating your CAFO, you have discharged and will

continue to discharge pollutants to waters on Mr. Garrison's property." (*Id.*, at 5). Thus, the notice identifies New Fashion Pork and BWT Holdings as the alleged violators.

Fourth, plaintiff's notice provided the location of the alleged violation. The notice identifies the land at issue as land in Emmet County, Iowa that contains a CAFO owned by defendants and is adjacent to land owned by plaintiff. (*Id.*, at 1). This is sufficient information for defendants to identify the location at issue.

Fifth, the notice contained the times of the violations. The notice states that "[t]he pit is emptied twice a year and the waste is applied to crop fields." (*Id.*, at 3). The notice does not provide an exact date of when the waste is emptied twice each year, but the notice requirements need not be "overly technical" and the twice-yearly application provided defendants sufficient information. *Hammes*, 381 F. Supp. 3d at 1042.

Sixth, the notice contained the name, address, and telephone number of the person giving notice. The original notice was printed on letterhead from plaintiff's attorney, identified plaintiff as the complaining party, and contained plaintiff's attorney's name, address, and telephone number. (Doc. 1-1). The notice attached to the amended complaint identified plaintiff as the complaining party and was signed by the same attorney as the prior notice. (Doc. 34-3, at 1, 8). Even if the contact information was not included in the amended notice, the name of the attorney and the information within the notice was the same, which sufficiently notified defendants that the contact information was the same as well.

Defendants argue that plaintiff's amended complaint alleges only an event that occurred in 2018 but the attached notice predates the alleged 2018 violation. Defendant is correct the 2018 violation is not specifically discussed in the notice, but not every detail of every alleged violation need be included. *Hammes*, 381 F. Supp. 3d at 1042. The amended complaint includes factual allegations regarding both the 2016 and 2018 violations. (Doc. 34, at 5-9). The 2018 violation does not appear to be different in

nature from the alleged 2016 violation, and plaintiff alleges in the notice that the same violative conduct from 2016 occurs twice per year and is ongoing. (Doc. 34-3, at 3). It is sufficient that the notice contained specific details and technical allegations regarding the 2016 violation and alleged that identical violations continued to occur twice per year. Thus, the specific details and technical allegations of the 2018 violation are not necessary. (*Id.*, at 3).

Even if plaintiff did not meet the technical requirements for each element of the notice provision, defendants have not shown that they were prejudiced by any shortfalls in the notice. Defendants allege the notice requirement is jurisdictional and it does not matter whether they were prejudiced. (Doc. 50, at 8). The purpose of requiring notice to alleged violators, however, is to "provide [ ] an alleged violator the opportunity to attempt compliance . . . thereby avoiding litigation based on the alleged violation." *Hammes*, 381 F. Supp. 3d at 1042 (quoting *Friends of the Earth*, 629 F.3d at 399). Defendants first received notice regarding their manure spreading practices from plaintiff on October 31, 2017. (Doc. 1-1). In that notice, plaintiff alleged defendants were committing continued violations twice a year. (Doc. 1-1, at 3). The 2018 violation in plaintiff's amended complaint was not a new type of harm being alleged, it was another violation in the series of violations alleged in the 2017 complaint. Defendants were aware of plaintiff's ongoing concern regarding the biannual manure spreading, and accepting plaintiff's allegations as true, did not change their practice after receiving the 2017 notice. Defendants have not shown that, had they been given notice of the 2018 violation, they would have changed their ongoing practice to comply with the CWA rather than continue with litigation. Additionally, defendants have not demonstrated they were prejudiced by not having the contact information of the complainant, as opposed to contact information for the complainant's attorney. Defendants previously received notice from the same attorney regarding the same client and could have contacted plaintiff's counsel regarding

any subsequent notice. If a showing of prejudice is required, defendants have not showed prejudice, and if prejudice is not required, the notice sufficiently complies.

Thus, the Court finds there are no jurisdictional or procedural defects related to the notice requirement that prevent the amended CWA claim from proceeding.

## *III. RCRA CLAIM*

Plaintiff brought its motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). (Doc. 35 at 1). Rule 59 only applies to final judgments. *See Warner v. Rossignol*, 513 F.2d 678, 684 n.3 (1st Cir. 1975) (noting that the "judgment" referred to in Rule 59 is the final judgment in the case). The Court's Order on defendants first motion to dismiss was not a final judgment because it did not dismiss all of plaintiff's claims, it permitted plaintiff to amend his CWA claim, which he did. *Nelson v. American Home Assurance Co.*, 702 F.3d 1038, 1043 (8th Cir. 2012); *see also Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 856 (8th Cir. 2008) ("[A]n order dismissing fewer than all claims or parties is generally not a final judgment."). A motion for relief from a nonfinal order is properly brought under Rule 60(b). *See id.* "Technical precision is not necessary in stating grounds for the motion so long as the trial court is aware of the movant's position." *Estate of Snyder v. Julian*, 789 F.3d 883, 886 (8th Cir. 2015) (internal quotation marks and citation omitted). In light of the content of plaintiff's motion, the Court will construe it as a motion to reconsider under Rule 60(b)(6).

Rule 60(b)(6) permits relief from an order for "any other reason that justifies relief," FED. R. CIV. P. 60(b)(6), and "thus allow[s] a district court to inject equity and revive an otherwise lifeless claim." *Watkins v. Lundell*, 169 F.3d 540, 544 (8th Cir. 1999). "Relief under Rule 60(b) is an extraordinary remedy that lies within the discretion of the trial court." *Hunter v. Underwood*, 362 F.3d 468, 475 (8th Cir. 2004); *see also Schultz v. Commerce First Fin.*, 24 F.3d 1023, 1024 (8th Cir. 1994) ("[T]he propriety of Rule 60(b) relief is committed to the trial court's discretion . . . .").

In its proposed Second Amended Complaint, plaintiff brings the same federal claims, including the RCRA claim that the Court previously dismissed with prejudice. (Doc. 35-1). "RCRA is a comprehensive statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996) (citation omitted). The Court dismissed plaintiff's claim because the facts alleged did not establish a plausible claim that RCRA applied to defendants' application of the manure to their fields. Generally, materials "destined for reuse as part of a continuous . . . process," such as manure being used as fertilizer, are not solid waste because they have not been abandoned or thrown away. *Am. Petroleum Inst. v. EPA*, 216 F.3d 50, 56 (D.C. Cir. 2000). In cases where manure is overapplied to fields to discard excess manure, however, it is possible the manure could constitute solid waste. (Doc. 31, at 12). In dismissing plaintiff's RCRA claim, the Court found that "[p]laintiff has not alleged facts establishing that the manure was overapplied for the purpose of disposing of the manure, and there are no factual allegations in plaintiff's complaint that the overapplication was so severe that the only possible explanation for the overapplication was to dispose of the manure." (Doc. 31, at 12).

Plaintiff pleads additional facts in the proposed Second Amended Complaint relevant to the RCRA claim, including facts that establish the manure runoff could be "solid waste" as defined by the RCRA. (*Id.*, at 6-8). Specifically, plaintiff alleges that in the fall of 2018 defendants spread manure onto the fields adjacent to plaintiff's property when the ground was covered with snow and/or frozen. (Doc. 35-1, at 7). Plaintiff further alleges that, "[t]here was no legitimate agricultural purpose for applying manure at that time of the year, and doing so caused the manure to flow directly downhill to the stream on [p]laintiff's property with little to none of the waste remaining on [d]efendant's property." (*Id.*). Plaintiff asserts that defendants repeatedly apply the manure in this

manner, and plaintiff anticipates the practice to occur again in approximately November 2019. (*Id.*).

Under Rule 60(b)(6), the Court has broad discretion "to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts." *Hoover v. Valley West D M*, 823 F.2d 227, 230 (8th Cir. 1987) (internal quotation marks omitted) (quoting *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir. 1984)). Generally, a dismissal for failure to state a claim should only be with prejudice where "no amount of re-pleading will cure the deficiencies." *Vigeant v. Meek*, 352 F. Supp. 3d 890, 900 (D. Minn. 2018) (alteration and citation omitted); *see also Bhd. Mut. Ins. Co. v. ADT LLC*, 978 F. Supp. 2d 1001, 1003 (D. Minn. 2013) (holding that dismissal without prejudice was appropriate where vague negligence allegation in the complaint sufficiently reflected the possibility that plaintiff could allege facts to support the claim). The spirit of the Federal Rules of Civil Procedure favors deciding claims on their merits rather than avoiding decisions on the basis of mere technicalities. *Foman v. Davis*, 371 U.S. 178, 181 (1962). The Court finds that plaintiff's proposed second amended complaint (Doc. 35-1) contains facts that present a cognizable claim under the RCRA which may be sufficient to withstand a Rule 12(b)(6) motion. Equitable principles and the Court's preference for deciding controversies on their merits justifies relief in this case. The Court therefore **grants** plaintiff's motion for relief from the Court's prior Order to the extent that it dismissed plaintiff's RCRA claim with prejudice.

## *IV. FEDERAL FARM BILL CLAIM*

Plaintiff's proposed second amended complaint, however, also contains a claim alleging a violation of the federal farm bill. The Court previously dismissed this claim with prejudice (Doc. 31, at 19) and plaintiff offers no reason why the Court should reconsider this judgment. Accordingly, plaintiff's request for leave to file the proposed

Second Amended and Substituted Complaint is **granted in part**, but plaintiff is instructed to excise the federal farm bill claim and re-file the second amended complaint.

## *V. DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE*

Defendants moved to dismiss plaintiff's amended complaint. (Doc. 39). In light of the Court's grant of leave for plaintiff to file its second amended complaint, the amended complaint will be supplanted. *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). Defendants' Motion to Dismiss Plaintiff's Amended Complaint is therefore **denied as moot**. Defendants may respond to the second amended complaint, once filed, in any way permissible under the Federal Rules of Civil Procedure or other relevant legal authority.

Defendants also moved to strike the RCRA and Farm Bill claims from the amended complaint. As the Court held above, plaintiff is instructed to excise the federal farm bill claim from the second amended complaint, so defendants' motion to strike the federal farm bill claim is **denied as moot**. The Court granted plaintiff's request for relief from the dismissal with prejudice of the RCRA claim. For the reasons set forth above, defendants' motion to strike the RCRA claim is **denied**.

## *VI. SECOND AMENDED COMPLAINT*

In addition to removing the Federal Farm Bill claim, the Court also instructs plaintiff to include the notice it sent to defendants prior to filing the amended complaint. As explained in the Court's prior order requesting supplemental briefing, the notice attached to the amended complaint was not on counsel's letterhead and was not signed so the Court requested the actual notice that was sent. In response, the Court received an identical copy of the notice that was attached to the original complaint. If plaintiff did not retain a copy of the notice for the amended complaint for his records, or if the plaintiff's notice was identical to the original notice, plaintiff is directed to state as such in his second amended complaint.

## *VII. CONCLUSION*

For the reasons stated above, plaintiff's Motion to Alter or Amend Judgment and for Leave of Court to Amend Plaintiff's RCRA Claim (Doc. 35) is **granted in part** to the extent it requests relief from the Court's dismissal with prejudice of plaintiff's RCRA claim and seeks leave to amend the RCRA claim. The motion is **denied in part** to any extent it seeks relief from the Court's dismissal of plaintiff's Federal Farm Bill claim or seeks leave to amend the Federal Farm Bill claim. The Court grants plaintiff leave to file its second amended complaint within fourteen (14) days of this Order. Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 39) is **denied as moot**. Defendants' Renewed Motion to Strike (Doc. 43) is **denied as moot** as to plaintiff's Federal Farm Bill claim and **denied** as to plaintiff's RCRA claim.

**IT IS SO ORDERED** this 22nd day of October, 2019.

__________________________
C.J. Williams
United States District Judge
Northern District of Iowa