**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

GORDON GARRISON,

    Plaintiff,

vs.

NEW FASHION PORK LLP; and BWT HOLDINGS LLLC,

    Defendants.

No. 18-CV-3073-CJW-MAR

**ORDER**

_____

**TABLE OF CONTENTS**

I. FACTUAL BACKGROUND ............................................................... 2

II. PROCEDURAL BACKGROUND ........................................................ 4

III. MOTION FOR SUMMARY JUDGMENT ............................................. 6

    A. Applicable Law ....................................................................... 7

    B. Wholly Past Violations ............................................................. 9

        1. Applicable Law ............................................................... 9

        2. Discussion .....................................................................10

            a. Parties' Arguments ..............................................11

            b. Manure Spreading Location Change ..........................11

            c. Physical Observations and Water Tests........................13

   d. Open-Dumping……………………………………………16

  C. State Law Claims………………………………………………16

IV. EXPERT REPORTS………………………………………………………18

V. CONCLUSION……………………………………………………………20

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 68), Plaintiff's Objections to Magistrate's Order Striking Plaintiff's Expert's Supplemental Report ("Objections to Magistrate's Order") (Doc. 86), and Defendants' Motion to Strike Expert Reports Submitted with Plaintiff's Resistance to Defendants' Motion for Summary Judgment ("Motion to Strike Expert Reports") (Doc. 88). Plaintiff timely resisted defendants' Motion for Summary Judgment (Doc. 81) and defendants filed a timely reply (Doc. 90). Defendants timely resisted plaintiff's Objections to Magistrate's Order. (Doc. 94). Plaintiff also timely resisted defendants' Motion to Strike Expert Reports (Doc. 93) and defendants filed a timely reply (Doc. 97). On February 27, 2020, the Court held a hearing on all the pending motions and the parties presented oral arguments. (Doc. 98).

For the following reasons, defendants' motion for summary judgment (Doc. 68) is **granted**. Plaintiff's Objections to Magistrate's Order (Doc. 86) and defendants' Motion to Strike Expert Reports (Doc. 88) are **denied as moot**.

## *I. FACTUAL BACKGROUND*

The following background facts are undisputed unless otherwise indicated. The Court will discuss additional facts below as they become relevant to the Court's analysis.

This case involves animal manure runoff from a confined animal feeding operation ("CAFO") that is allegedly damaging a neighboring landowner's property. Defendants

own and operate a CAFO in Emmet County, Iowa, on a piece of land known as the "Sanderson property." (Docs. 79, at 1; 81-1, at 1). Defendants' business and operations, however, are not limited to the CAFO on the Sanderson property. Instead, defendants and their subsidiaries own and operate a vast agricultural network related to their hog operations. For example, defendants own significant amounts of farmland on which they plant crops that have been fertilized with manure produced by their hogs. (Doc. 81-1, at 5). Defendants also sell excess manure to other farmers and generate revenue through other means related to raising hogs. (*Id.*, at 3-5).

Plaintiff is an individual who lives in Emmet County, Iowa. (Doc. 91, at 1). Plaintiff's property is adjacent to the Sanderson property. (Doc. 79, at 1). Plaintiff alleges that defendants have previously misapplied and continue to misapply hog manure to defendants' fields, which causes the manure to runoff into water on plaintiff's property. (Doc. 60, at 6-7, 9). Plaintiff alleges that this misapplication of hog manure generated at the CAFO on the Sanderson property violates the Resource Conservation and Recovery Act ("RCRA"), the Clean Water Act ("CWA"), and Iowa statutes, regulations, and common law. (*Id.*, at 3-14).

The manure pit on the Sanderson property is scheduled to be emptied by defendants every fall after the crop harvest is complete. (Doc. 81-1, at 6). To empty the pit, defendants fill a tanker truck with the manure and then apply the manure directly into the soil. (*Id.*). The manure is directly injected into a small slit in the soil and then covered with another layer of soil. (*Id.*, at 6-7). Excess manure that is not applied to defendants' fields is sold as fertilizer to other farms. (*Id.*, at 3-5).

Plaintiff alleges that on two separate occasions defendants improperly applied the manure to fields on the Sanderson property. First, in 2016, plaintiff observed defendants apply manure to the Sanderson property when the soil was saturated from recent rains. (*Id.*, at 7). Second, in the fall of 2018, defendants applied manure on top of frozen

ground and snow. (*Id.*). In the fall of 2018, the ground at the Sanderson property was too frozen and snow-covered to inject the manure into the soil. (*Id.*). Before applying the manure, defendants contacted the Iowa Department of Natural Resources ("DNR") to get permission to spray manure onto the frozen ground rather than inject it. (*Id.*). The DNR approved the application and defendants sprayed manure onto the frozen ground with the stated intent that the manure would also freeze and soak into the ground during the spring thaw. (*Id.*). In December 2018, however, the weather became unseasonably warm, which caused the manure to unfreeze and run off the Sanderson property. (*Id.*, at 8). The DNR sent defendants a notice of violation for the December 2018 discharge. (*Id.*, at 12). Defendants entered into an Administrative Consent Order with the DNR which included an administrative penalty and an order for defendants to develop a standard procedure for applying manure. (*Id.*, at 12-13).

## II. PROCEDURAL BACKGROUND

Plaintiff filed his first complaint in this case on December 20, 2018. (Doc. 1). In his first complaint, plaintiff asserted three federal claims based on RCRA, the CWA, and Federal Farm Bill violations. (*Id.*, at 4-10, 13-14). Plaintiff also asserted state law claims for manure management plan violations, unlawfully discharging manure through air emissions, violating drainage laws, nuisance, and trespass. (*Id.*, at 10-15). In the original complaint, however, plaintiff only alleged a single specific act that occurred in October 2016 giving rise to plaintiff's claims. (*Id.*, at 7-8).

Defendants moved to dismiss plaintiff's RCRA, CWA, and Federal Farm Bill claims. (Doc. 9). For plaintiff to assert RCRA and CWA claims plaintiff had to allege ongoing violations. Defendants argued the complaint failed to allege any ongoing violations, that the manure was not "solid waste" subject to RCRA, that there was no discharge into navigable waters, that RCRA's anti-duplication provision precluded claims for both CWA and RCRA violations, and that the complaint did not cite to a specific

4

Federal Farm Bill violation. (Doc. 13, at 3-21). Defendants also moved to dismiss the remaining state law claims because, after dismissing the federal claims, the district court would lack supplemental jurisdiction. (*Id.*, at 21-22). Defendants requested oral argument (Doc. 17). The Court granted the request (Doc. 19) and held oral argument on defendants' motion (Doc. 25).

After oral argument, the Court found plaintiff could only point to a single specific violation and general statements that the manure was applied once or twice every year to support his claim that the violations were ongoing. (Doc. 31, at 7-10). The Court concluded a single specific violation was insufficient to show an ongoing violation. (*Id.*). The Court did, however, permit plaintiff to amend his complaint to allege additional facts that could show there was an ongoing violation of the CWA. (*Id.*, at 9).

To assert a claim under RCRA plaintiff also had to allege sufficient facts to support a finding that defendants were discarding "solid waste" as defined by RCRA. Based on the complaint and oral argument, the Court found that plaintiff had not alleged that defendants were applying manure to defendants' fields to discard it, and thus the manure was not "solid waste." (*Id.*, at 10-13). Because there was no solid waste, plaintiff's RCRA claim failed, and the Court dismissed the RCRA claim with prejudice. (*Id.*, at 13). The Court also found the Federal Farm Bill did not create a private right of action, so the Court dismissed plaintiff's Federal Farm Bill claim as well. (*Id.*, at 18-19). Finally, because the Court allowed plaintiff to amend his CWA claim, the Court declined to address its supplemental jurisdiction over the state law claims. (*Id.*, at 19-21).

Plaintiff responded to the Court's order by filing an amended and substituted complaint alleging a second specific violation of RCRA and the CWA. (Doc. 34). Plaintiff alleged that in the fall or early winter of 2018 defendants spread manure on fields that were "covered in snow and/or frozen." (*Id.*, at 9). Plaintiff also moved for the Court to amend or correct its judgment and for leave to amend his RCRA claim.

(Doc. 35). Plaintiff asserted that the fall or early winter 2018 violation could also be used to show that defendants were not using the manure as fertilizer, and instead they applied the manure to discard it. (Doc. 35-1, at 7). Thus, plaintiff argued the manure was "solid waste," and he could allege a valid RCRA claim. The Court permitted plaintiff to file his Second Amended and Substituted Complaint. (Doc. 52, at 10).

Plaintiff's second amended complaint asserts seven causes of action. (Doc. 60). Specifically, plaintiff alleges that defendants violated or are violating RCRA and the CWA. (*See id.*, at 3-12). The other five causes of action assert claims under Iowa law. (*Id.*, at 12-14). Defendants moved to dismiss the RCRA, CWA, and air emissions claim and asked that the Court decline to exercise supplemental jurisdiction over the remaining state law claims. (Doc. 63). The Court granted defendants' motion to dismiss the air emissions claim but denied the motion as to the rest of the claims. (Doc. 72).

Defendants now move for summary judgment on plaintiff's RCRA, CWA, and Manure Management Plan claims and ask the Court to decline to exercise supplemental jurisdiction on the remaining state law claims. (Doc. 71, at 2-3). The Court heard oral argument on defendants' Motion for Summary Judgement, as well as defendant's Motion to Strike Expert Reports and plaintiff's Objections to Magistrate's Order, on February 27, 2020. (Doc. 98).

### III. MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment here. Defendants argue that plaintiff's RCRA claim must fail because plaintiff failed to provide the required notice for the 2018 violation. (Doc. 71, at 4-6). Defendants also argue that the manure at issue is not "solid waste" covered by RCRA. (*Id.*, at 6-9). As a third basis for summary judgment, defendants assert plaintiff cannot prove any imminent or future harm that would subject defendants to liability under RCRA. (*Id.*, at 9-11). Lastly, defendants argue RCRA's anti-duplication provision bars plaintiff's claim. (*Id.*, at 11-13).

Defendants then argue that the Court should grant summary judgment on plaintiff's CWA claim because the DNR's administrative enforcement action precludes plaintiff's CWA claim. (*Id.*, at 13-16). Defendants also reassert their ongoing violation and lack of notice arguments as to plaintiff's CWA claim. Next, defendants argue plaintiff cannot prove a discharge from a point source. (*Id.*, at 17-19). Last, defendants argue plaintiff cannot prove any discharge into a navigable water as required by the CWA. (*Id.*, at 19-20).

Defendants also argue that the Court should dispose of plaintiff's state law claims. Defendants assert the Court should grant summary judgment on plaintiff's manure management plan claim because plaintiff admitted that the plan is fully compliant with Iowa law. (*Id.,* at 22-24). Defendants also assert that after granting summary judgment on plaintiff's federal claims, the Court should dismiss any remaining state law claims for lack of supplemental jurisdiction. (*Id.*, at 24-25).

### A.     *Applicable Law*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it requires "a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable

8

to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine[.]" *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). When considering a motion for summary judgment, the court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

### B. *Wholly Past Violations*

The Court first considers whether there is a genuine issue of material fact as to any current and ongoing violations of RCRA and the CWA. The Court finds plaintiff has only provided evidence of past violations but has not provided any evidence from which a reasonable factfinder could find that defendants' violations are current and ongoing. Thus, because there is no genuine issue of material fact that defendants' violations are wholly past violations, defendants' motion for summary judgment as to plaintiff's RCRA and CWA claims is **granted**.

#### 1. *Applicable Law*

As the Court explained in its Order granting in part and denying in part defendants' Motion to Dismiss Plaintiff's Second Amended and Substituted Complaint, RCRA does not support citizen suits for wholly past violations. (Doc. 72, at 9-11) (citing *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483-86 (1996)). RCRA's purpose is to "minimize the present and future threat to human health and the environment" by reducing hazardous waste and ensuring waste is properly treated, stored, and disposed of. *Meghrig*, 516 U.S. at 483 (quoting 42 U.S.C. § 6902(b)). RCRA's citizen suit provision "permits a private party to bring suit only upon a showing that the solid or hazardous waste at issue

9

'may present an imminent and substantial endangerment to health or the environment.'" *Id.* at 485 (quoting 42 U.S.C. § 6972(a)(1)(B)). The statute's reference to waste which "may present" imminent harm "excludes waste that no longer presents such a danger." *Id.* at 485-86. A harm is imminent if it threatens to occur immediately. *Id.* RCRA's language is clear that a remedy is not available for wholly past violations, and thus, a plaintiff must allege that the defendants' RCRA violation "is current and ongoing." *307 Campostella, LLC v. Mullane*, 143 F. Supp. 3d 407, 413 (E.D. Va. 2015). The CWA similarly does not support citizen suits for wholly past violations. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987).

### 2. *Discussion*

In the Court's Order on defendants' second motion to dismiss, the Court rejected defendants' argument that the second amended complaint only alleged past violations of RCRA and the CWA. (Doc. 72, at 11, 16-17). In reaching its finding, the Court considered plaintiff's allegations of the 2016 incident, the 2018 incident, and plaintiff's additional circumstantial allegations. (*Id.*, at 11). The Court found that "[w]hen viewed independently, the 2016 and 2018 incidents appear to be wholly past violations." (*Id.*). When combined with plaintiff's additional circumstantial allegations about defendants' pattern of violations, however, the Court found the allegations were sufficient to state a claim of imminent and ongoing harm. (*Id.*). The Court did not find that there are current and ongoing violations, it found that plaintiff had alleged facts that raised the right to relief above a speculative level. (*Id.*, at 9-10). At the summary judgment stage, though, plaintiff's allegations alone are insufficient; plaintiff must point to facts in the record from which a jury could find a current and ongoing violation of RCRA and the CWA. *See* FED. R. CIV. P. 56(a); *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment.").

10

### a. Parties' Arguments

Defendants make two arguments in support of their assertion that plaintiff cannot show any ongoing violation. First, defendants argue that they did not apply any manure on the Sanderson property following the 2019 harvest, electing instead to dispose of the manure from the Sanderson property CAFO onto another property owned by defendants. (Docs. 71, at 10; 81-1, at 11). In other words, defendants argue plaintiff cannot show an ongoing violation because defendants now have an alternative disposal method and no longer need to apply manure to the Sanderson property. Second, defendants argue that "[p]laintiff does not have any evidence that there is any immediate and substantial endangerment that meets the threshold requirement of RCRA" (Doc. 71, at 10) or the CWA (*id.,* at 16-17).

Plaintiff makes several arguments in support of his claim that there is an imminent and ongoing threat. First, plaintiff argues that defendants' decision to apply the manure to other fields effectively serves as an admission that defendants were creating an imminent and substantial endangerment. (Doc. 83, at 18). Second, plaintiff argues the manure was disposed of in violation of anti-dumping laws. (*Id.*). Third, plaintiff asserts that "evidence shows . . . that from the start of the Defendants' CAFO operation until the fall of 2019, they had repeatedly applied manure to the field and the water tests show that excess manure was polluting [plaintiff's] property." (*Id.*, at 27).

### b. Manure Spreading Location Change

The Court is not persuaded by defendants' argument that because defendants now have another field on which they can apply manure, there is no longer a threat of imminent or ongoing harm. Other than the 2016 and 2018 incidents, plaintiff's only allegation of an ongoing harm is that the manure application occurs annually. It is true, then, that since defendants started spreading the manure elsewhere, the evidence in the record shows that violations do not occur annually as a standard practice. But, for the

Court to find defendants' spreading practice change shows there is no threat of future or imminent harm, there must be clear evidence the original spreading practices could not reasonably be expected to recur. *Mississippi River Revival, Inc. v. City of Minneapolis*, 319 F.3d 1013, 1016 (8th Cir. 2003). Defendants, however, have done nothing to show they will not start applying manure to the Sanderson property after this lawsuit is resolved. Thus, defendants' one-time change in spreading practices does not, standing alone, establish that there is no threat of ongoing or imminent harm.

The Court, however, finds plaintiff's argument that defendants' change in practices shows there was an imminent and ongoing threat unpersuasive as well. Plaintiff has cited only one piece of evidence in support of its argument, namely defendants' environmental manager Jay Moore's statement that this lawsuit was "definitely a consideration" in defendants' decision to begin spreading manure elsewhere. (Doc. 83, at 18). Plaintiff does not cite any additional evidence that defendants were concerned they would be found liable if they continued spreading, nor do they cite any additional evidence that could lead the Court to conclude defendants were concerned there was an ongoing and imminent threat. Far from an effective admission, plaintiff's argument amounts to nothing more than a conclusory guess at defendants' motives and reasoning.

The Court would also be unlikely to consider defendants' new spreading practices as evidence of an admission that there was an imminent and ongoing threat if the case proceeded to trial. Federal Rule of Evidence 407 provides: "When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; . . .." All evidentiary rules are generally relaxed when the judge is the fact-finder, as will be the case in the bench trial here. *Null v. Wainwright*, 508 F.2d 340, 344 (5th Cir. 1975) ("Strict evidentiary rules of admissibility are generally relaxed in bench trials . . ..."). Despite the relaxed standard, evidentiary rules still apply. A party opposing a motion

for summary judgment can only rely on evidence "that would be admissible in evidence" to generate a genuine issue of material fact. FED. R. CIV. P. 56(c)(2). Here, plaintiff seeks to use defendants' decision to spread manure on another field to show that there was previously an imminent and ongoing threat. In other words, plaintiff wants the Court to conclude that defendants' subsequent remedial measure is proof that defendants previously violated the law. Thus, the Court would not consider this evidence at trial as an admission of a prior violation.

Although the Court does not find that defendants' change in spreading practices showed there was an imminent and ongoing threat, if defendants resumed spreading on the Sanderson property and additional specific instances of discharge onto plaintiff's property occurred, it could create an imminent and ongoing threat going forward. The 2016 and 2018 spreading events standing alone do not create a pattern of ongoing harm, but if additional events occurred each year then there would be a question of fact whether the events were isolated or part of a pattern establishing an imminent and ongoing harm.

Finding neither plaintiff's nor defendants' arguments decisive on this point, the Court will consider the parties' additional arguments.

### c. *Physical Observations and Water Tests*

Turning to defendants' second argument, the Court finds plaintiff has not presented any evidence that the violations are imminent and ongoing. Once the party moving for summary judgment has identified the portions of the record which show the lack of a genuine issue, the nonmoving party must designate specific facts showing that there is a genuine issue for trial. *Hartnagel*, 953 F.2d at 395 (citation omitted). Plaintiff asserts "the results of water tests and physical observations clearly established that the [d]efendants would be causing imminent and substantial endangerment to [plaintiff's] property." (Doc. 83, at 17, 27). Plaintiff provided deposition testimony that he observed manure applied to saturated soil, but this observation appears to be based on a single

occurrence. (Doc. 68-3, at 35). Plaintiff has not identified any additional evidence that he physically observed misapplications or overapplications on an ongoing basis causing manure runoff into his stream. Plaintiff's argument, then, rests entirely on his claim that the water tests create a genuine issue of material fact about the ongoing nature of defendants' actions.

The water test results do not create an issue of material fact. First, plaintiff's water tests do not show a pattern of ongoing violations. Part of the Court's reasoning in allowing plaintiff's claim to survive defendants' second motion to dismiss was plaintiff's claim that defendants empty the manure pit under the CAFO once or twice each year and defendants then apply the manure to their crop fields on the Sanderson property. (Doc. 72, at 10). Plaintiff also asserts that in 2016 and 2018 manure was applied to a saturated field and a snow-covered field, respectively. The Court understands these allegations to mean that when manure was applied to the field the manure was not taken up by the soil and instead ran off the topsoil into plaintiff's stream. For the water testing results to support plaintiff's allegations the results would need to show periodic spikes correlating to defendants annual or semi-annual emptying of the manure pit. Plaintiff's water samples, however, do not show spikes in nitrate levels once or twice a year indicating a pattern of violations correlating with the alleged misapplications or overapplications.

Even if plaintiff's argument is that it takes time for overapplied manure to work its way through the soil into the drainage system and then into plaintiff's stream, plaintiff's inference is only reasonable if there is some pattern of increased nitrate levels that correlate with overapplication, or some other evidence in the record linking the water testing results to the timing of the alleged misapplications or overapplications. Plaintiff has provided no evidence that any increased level of nitrates correlates to the once or twice-yearly manure application. Indeed, the only pattern the Court is able to discern in plaintiff's evidence is a slight decrease in nitrate levels from 2016 to the end of 2018, the

14

period during which plaintiff alleges that defendants violated RCRA and the CWA. (Docs. 81-3, at 3-17; 81-4).

Second, plaintiff has not designated any expert to testify about the nitrate levels or specifically about the issue of causation. Even if the Court allows each of plaintiff's proposed experts' testimony in its entirety, plaintiff cannot link the nitrate levels in the water tests to misapplication of the manure. Plaintiff's proposed experts discuss manure management plans and soil drainage issues, but the Court finds no expert testimony in the record linking defendants' alleged overapplication or misapplication of manure to higher levels of nitrates in plaintiff's water tests. (*See* Doc. 81-5, at 1-29). Although taking water samples and testing them for nitrates may not require scientific or specialized skill, interpreting the results does require expert analysis. Here, plaintiff has provided no expert testimony, admissible or not, tying defendants' alleged misapplications or overapplications of manure to the nitrate levels in the stream on plaintiff's property. Plaintiff has also not established a baseline to show that the nitrate levels are occurring at a higher rate than before defendants started spreading manure or at a higher rate than would be expected to naturally occur. Without an established baseline or metric there is no evidence that the nitrate levels are occurring at a higher rate attributed to runoff from defendants' fields.

Thus, plaintiff's water tests do not establish a discernable pattern of violations, nor does plaintiff provide evidence that the nitrate levels are caused by defendants' manure application. Plaintiff, then, can only point to the two wholly past violations in 2016 and 2018 in support of his RCRA and CWA claims. Just as the Court found in its prior Orders, these two instances standing alone are insufficient to support a claim that defendants' violations are imminent and ongoing.

### d. Open-Dumping

Plaintiff also argues defendants' "over-application of manure constituted open dumping, in violation of RCRA." (Doc. 83, at 18). RCRA does prohibit open dumping of solid or hazardous waste. 42 U.S.C. § 6944(b). RCRA also authorizes citizen suits against anyone engaged in open dumping. 42 U.S.C. § 6945(a). Plaintiff asserts, without citing to any legal support, that the threat of imminent and substantial harm is not necessary in a citizen suit for an open dumping violation. Plaintiff's failure to support his assertion waives this argument. *See Wells v. LF Noll, Inc.*, No. 18-CV-2079-CJW-KEM, 2019 WL 5596409, at *9 (N.D. Iowa Oct. 30, 2019). Even if plaintiff did not waive the argument, the open dumping prohibition is not excepted from the general requirement that RCRA violations must be ongoing or imminent for a citizen suit to be successful. *See S. Rd. Assocs. v. Int'l Bus. Machs. Corp.*, 216 F.3d 251, 255-57 (2d Cir. 2000) (finding an action could be maintained only if a party was presently engaged in the act of open dumping). Because, as the Court found above, there is no imminent or ongoing threat defendants are entitled to summary judgment on plaintiff's open dumping claim.

Because RCRA and the CWA do not support citizen suits for wholly past violations, defendants' Motion for Summary Judgment is **granted as to** plaintiff's RCRA and CWA claims. Thus, the Court need not consider defendants' alternative arguments in support of summary judgment on plaintiff's RCRA and CWA claims.

### C. State Law Claims

Title 28, United States Code, Section 1367 provides that, when a district court has original jurisdiction over a claim, "the district court[ ] shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). When the district court has dismissed all claims over which it has original

jurisdiction, the district court "may decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c). There is no dispute that the Court had federal-question jurisdiction over this case under Title 28, United States Code, Section 1331, because of plaintiff's RCRA and CWA claim. While plaintiff's federal claims were pending, the Court also had supplemental jurisdiction over plaintiff's state law claims because all of plaintiff's claims arose from the same alleged conduct by defendants. The only question, then, is whether the Court can and should exercise supplemental jurisdiction over plaintiff's state law claims now that the Court had disposed of plaintiff's federal claims.

"It is within the district court's discretion to exercise supplemental jurisdiction after dismissal of the federal claim[s]." *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (citation and internal quotation marks omitted). In determining whether to exercise supplemental jurisdiction over state law claims, courts "consider 'judicial economy, convenience, fairness, and comity.'" *Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7. When "resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction." *Glorvigen*, 581 F.3d at 749 (quotation omitted).

Here, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims. First, the Court finds judicial economy does not weigh in favor of exercising supplemental jurisdiction. The Court's previous work on this matter has primarily involved analysis of the federal claims. Although the Court is familiar with the parties' arguments on the state law claims, it has not conducted an intensive analysis of those claims. Also, Iowa state courts are more familiar with the substantive law on plaintiff's

17

Iowa common law and Iowa Code claims, and thus it is in the interest of judicial economy for the Iowa state courts to handle plaintiff's state-law claims. Second, when the plaintiff can no longer assert federal claims, comity favors remand. *Glorvigen v. Cirrus Design Corp.*, Civil No. 06-2661 (PAM/JSM), 2008 WL 9392210, at *2 (June 25, 2008). Here, the Court has granted summary judgment on the two federal claims and no federal claims remain. Third, the parties will not be significantly inconvenienced, nor will it be substantially unfair if the Court declines to assert supplemental jurisdiction. There will always be some inconvenience if a party must refile its claims in another court, but there is nothing here that indicates any inconvenience or unfairness beyond the general inconvenience. Thus, unfairness and inconvenience do not outweigh the other factors.

For these reasons, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Thus, plaintiff's state law claims are **dismissed without prejudice**.

## IV. EXPERT REPORTS

The Court next considers the parties' motions to exclude expert reports. First, plaintiff objects to Magistrate Judge Roberts' order striking Robert Streit's ("Streit") supplemental report. (Doc. 86). Plaintiff argues that Streit's supplemental report does not offer any new opinions but only clarifies and expands upon opinions that were already offered, and thus is timely and admissible. (Doc. 86-1, at 5). Alternatively, plaintiff argues that even if the supplemental report was not timely, "the appropriate remedy is not to exclude the report." (*Id.*, at 8). Defendants disagree with both of plaintiff's arguments and urge the Court to uphold Judge Roberts' Order. (Doc. 94).

Second, defendants move to strike portions of plaintiff's affidavit, Paul Kassel's ("Kassel") expert report, and Streit's supplemental report that plaintiff submitted with his resistance to summary judgment. (Doc. 88, at 2). Defendants assert that Kassel's report and the objectionable portions of plaintiff's affidavit rely on expert analysis and

18

calculations and their conclusions required scientific, technical, or specialized knowledge. (Doc. 88-1, at 2-6). Defendants then argue that neither Kassel nor plaintiff were ever disclosed as expert witnesses as required by Federal Rule of Civil Procedure 26(a)(2). (*Id.*). Defendants also assert that Judge Roberts' January 23, 2020 Order previously struck Streit's supplemental report, and thus the Court cannot consider it in ruling on defendants' Motion for Summary Judgment. (*Id.*, at 7).

In response, plaintiff asserts the portions of plaintiff's affidavit at issue are not expert opinions. (Doc. 93, at 2-5). Plaintiff concedes that Kassel should have been listed as an expert, but alleges defendants were not prejudiced by this oversight. (*Id.*, at 5-9). Plaintiff also reasserts his arguments about Streit's supplemental report that plaintiff raised in his objection to Judge Roberts' order. (*Id.*, at 9).

The Court finds it cannot rule on either defendants' or plaintiff's motions. Under Article III of the United States Constitution, the Court can only adjudicate actual cases and controversies before it. *Pucket v. Hot Springs Sch. Dist. No. 23-2*, 526 F.3d 1151, 1157 (8th Cir. 2008). Stated differently, a party must have "'a definite and concrete controversy involving adverse legal interests at every stage in the litigation[,] . . . for which the court can grant specific and conclusive relief." *Ark. AFL-CIO v. FCC*, 11 F.3d 1430, 1435 (8th Cir. 1993) (quoting *McFarlin v. Newport Special Sch. Dist.*, 980 F.2d 1208, 1210 (8th Cir. 1992)). Thus, if a court grants judgment on a claim or a set of claims that disposes of the case or controversy, any remaining motions related to the claim or claims are no longer justiciable because the parties no longer have an adverse legal interest.

The Court has granted defendants' motion for summary judgment on plaintiff's RCRA and CWA claims and dismissed the remaining state law claims without prejudice. Because there are no claims remaining before the Court, there is no longer a case or controversy here. Thus, the Court may not decide whether to strike or exclude plaintiff's'

expert witnesses. Plaintiff's objections to Magistrate Judge Roberts' Order and defendants' Motion to Strike Expert Reports are **denied as moot**.

## V. CONCLUSION

For these reasons, defendants' motion for summary judgment (Doc. 68) is **granted** as to plaintiff's RCRA and CWA. Plaintiff's remaining state law claims are **dismissed without prejudice**. Plaintiff's Objections to Magistrate's Order Striking Plaintiff's Expert's Supplemental Report (Doc. 86) and defendants' Motion to Strike Expert Reports (Doc. 88) are **denied as moot**.

**IT IS SO ORDERED** this 27th day of March, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa